## 11829

### PEOPLES FEDERATION BANK v. ENGLISH

#### (129 S. E., 156)

1. USURY—ADVANCE PAYMENT OF INTEREST AT MAXIMUM LEGAL RATE AND SIMULTANEOUS PAYMENT OF PART OF PRINCIPAL HELD NOT TO RENDER TRANSACTION USURIOUS.—That mortgagor made quarterly interest payment in advance at maximum legal rate on whole amount of indebtedness, and at same time made payment on principal, reducing amount on which advance interest had been paid, *held* not to render transaction usurious, in view of presumption that creditor would apply payment to interest and balance to principal, and in view of fact that interest payment so made and other similar ones were overdue when made so as to warrant a charge of interest on interest.

2. MORTGAGES—MORTGAGE BOND CONSTRUED AS TO MANNER OF PAYMENT.—Mortgage bond, providing for payment of principal one year after date, with interest at rate of 8 per cent. per annum, payable quarterly in advance, "and $50 payable on principal until whole amount of principal and interest be paid," *held* construable as agreement that obligee would not enforce payment according to terms so long as quarterly payments of interest and $50 on principal were made.

Before MEMMINGER, J., Charleston, 1924.   Affirmed.

Action by the Peoples Federation Bank against Lucretia C. English.   Decree for plaintiff and defendant appeals.

*Mr. T. St. Mark Sasportas* for appellant.

*Mr. H. L. Erckmann* for respondent.

September 8, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

The following statement is taken from the case on appeal:

"This action was commenced on the 4th day of December, 1923, for the foreclosure of a mortgage.   The defendant's answer raised the following issues:   First, does the bond provide two alternative conditions, conformity to either of which is a compliance with the terms thereof? Second, what is the amount of the debt matured at the time of the commencement of the action?   Third, has the bond become infected by usury?

"The case was referred to Master F. K. Myers, March 17, 1924, who held a reference on the 3d of April, and submitted his report on the 21st of April, 1924.   To this report defendant excepted, upon which exceptions case was heard by Judge Memminger at chambers, and a decree of foreclosure made June 11, 1924.   From this decree, defendant appeals."

The report of the Master makes sufficient reference to the pleadings and the issues raised by them, so as to make the nature of the controversy apparent without quoting further from the pleadings.   The following is the report of the Master:

"I find that on the 10th day of May, 1921, the defendant executed and delivered to the plaintiff her bond conditioned for the payment of the principal sum of $3,800, one year after date, together with interest at the rate of 8 per cent. per annum, interest payable quarterly in advance, and $50

payable on the principal until the whole amount of principal and interest is paid; and that on the said 10th day of May, 1921, the defendant, in order to secure the payment of the said bond, executed and delivered to the plaintiff her mortgage of the premises known as No. 239 Ashley Avenue, as described in Paragraph 3 of the complaint herein, which mortgage contained the usual clauses as to the payment of taxes, insurance, and attorney's fees, and was duly recorded in the R. M. C. O. for Charleston County in Book O-30, page 83.

"Plaintiff alleges that the said bond is in default, and that there is due thereon, secured by the lien of the said mortgage, the sum of $3,600, with interest from the 14th day of November, 1923.

"The answer of the defendant admits the execution of the bond and mortgage conditioned for the payment of $3,800 on the terms set out in the complaint, and alleges that said bond was payable in quarterly installments of $50, together with interest; that the said installments and interest due were tendered on the 10th day of November, 1923, and refused by the plaintiff, and that defendant is now, and has been ever since, willing to pay the interest and quarterly installments due, and to continue the payments on the bond required by its terms.

"Defendant pleads usury, and has paid into the Court as of April 3, 1924, the sum of $470, as a tender of the amount claimed to be due by the defendant as of that date under her construction of the terms of the bond.

"The plaintiff admits payments on account of the principal of the bond of $100, February 23, 1922, and $100, August 14, 1923. The defendant endeavors to show the further payment of $100, and as proof thereof offers a statement furnished to the defendant under date of December 14, 1923, subsequent to the filing of the complaint, with notations of payment of $100, February 23, 1922, and $100, August 14, 1922. This statement is signed by John H.

Pinckney, cashier of the plaintiff bank, who testifies that the item shown thereon, August 14, 1922, should have been August 14, 1923.   C. M. English, the husband of the defendant, testifies a payment of $100 was made on August 14, 1922, but he has no evidence of the payment claimed, stating that he has been unable to secure the return of canceled checks from the bank.   The explanation of John H. Pinckney that the date on the statement furnished December 14th of credit August 14, 1922, is an error is a perfectly reasonable explanation, and it would be an unusual circumstance, in view of the fact that only two payments are admitted on principal and three payments on principal alleged, should there have been a payment on the identical day in August, 1922, and in August, 1923.   It is further shown that subsequent payments of interest by the defendant, after August 14, 1922, were made without any claim of a credit due on the principal as of that date.

"Evidence has been offered of understanding, had by defendant with the officers of the bank, for payment of principal of the bond in quarterly installments of $50 each as fixing the terms of the bond.   I find that the officers of the bank did agree to accept payment on these terms.   At the time suit was instituted, defendant had not complied with the terms of the agreement and understanding so reached.   It is not unusual for holders of obligations to vary the conditions of the obligation, and so long as the obligor complies with the verbal agreement, he may be entitled to the intervention of the Court of equity against the enforcement of the original terms; however, default had been made in quarterly payments, and it is contended that, there being no option in bond or mortgage by which the mortgagor may declare the whole amount due upon default in the payment of installments, foreclosure may only be enforced to the extent of the installments past due.

"Where there is any ambiguity in the written instrument, a reasonable construction should be given.   In the bond

now under consideration, the defendant obligated herself
to pay to the plaintiff bank $3,800 one year after date. The
provision for payment of interest quarterly in advance is .
clear, but the following provision, "and $50 payable on the
principal until the full amount of interest. and principal is
paid," is ambiguous, and can only be taken as an expression
of the agreement and understanding that the obligee. of the
bond would not enforce payment according to its terms so
long as quarterly payments of interest and quarterly pay-
ments of $50 on account of the principal were promptly
made. It is my construction of the conditions of the bond
that the action for foreclosure for the full balance of prin-
cipal due on the bond is properly brought. ·

"Cases of *Bank v. Parrott,* 30 S. C., 61, *Newton v.
Woodley,* 55 S. C., 141, and *Tate v. Leonard,* 110 S. C.,
579, sustain the legality of a contract for the payment of
interest in advance at the rate of 8 per cent. per annum, and
the right of the obligor to collect interest on deferred pay-
ments of interest. The calculation of the amount due on
defendant's bond and mortgage, based on the dates of pay-
ments of interest and principal, shows interest on interest
due the bank at the rate of interest payments in excess of
the excess interest which the defendant charges the bank
with having collected, as the basis for the plea of usury.
On February 23, 1922, the defendant paid the sum of $76,
the amount of interest due on February 10, 1922, and $100
on account of the principal. The presumption is, the two
payments having been made on the same date, that the
interest was paid and accepted by the bank before the pay-
ment on account of the principal was accepted or credited.
I therefore find that the plea of usury is not sustained.

"I find that the said bond is in default, and that there is
due thereon to the plaintiff herein the sum of $3,600 on
account of the principal, with interest to be computed at
the rate of 8 per cent. per annum, according to the terms
of the said bond, from the 14th day of November, 1923,

together with the further sum of 10 per cent. of the principal and interest due as attorney's fees, as provided in and by the said mortgage.

"I therefore respectfully recommend that the said mortgage be foreclosed and the equity of redemption barred; that the mortgaged premises be ordered sold by the Master herein at public auction, after due advertisement, at Charleston Real Estate Exchange, in the City of Charleston, at such time and upon such terms as the Court shall direct; that the proceeds of sale, after the payment of proper costs and expenses of this proceeding and of such sale, be applied to the payment of the amount herein found to be due the plaintiff; and that the balance, if any, together with the amount held by the Master herein deposited as a tender on the said bond, as herein reported, be held for the defendant, Lucretia C. English."

An appeal from this report was heard by his Honor, Judge Memminger, as hereinbefore stated, who confirmed the report of the Master and made a short decree of foreclosure following such confirmation. The defendant has appealed to this Court on various exceptions taken to the decree of Judge Memminger.

The exceptions raise practically two issues: One as to the construction of the bond; and the other issue is raised under the plea of usury. The question of usury will be first considered. It is manifest that it was the intention of the parties, in the beginning, that there should not be such a rate of interest agreed upon or charged as would make the transaction usurious. This is shown by the statement appearing in the bond that the bond "should not be considered in any manner to provide for more than the highest rate of interest allowed by law for the use of the loan represented thereby."

The charge of usury grows out of the fact that on February 23, 1922, the defendant received from the appellant $76 as interest, and on the same day $100 was paid on

account of principal, paid in two installments of $50 each.

It will be noted that the bond is dated May 10, 1921, and the quarterly payments should correspond with such date. In this instance, the payment was made on the 23d day of the month, and not on the 10th. The appellant, in argument, claims that, the indebtedness having been reduced by $100, the interest should have been $74 for the quarter, and not $76; making a difference of $2, but allows interest from the 10th day of the month to the 23d day of the month, on which the $76 was paid, and this interest amounts to 29 cents, leaving $1.71 claimed to be in excess of the lawful sum that could be received as interest, and rendering the transaction usurious.

The Master has found, and the Circuit Judge concurred in the finding, that the presumption is that interest was first paid, and then $100 was paid on the principal. We think that this is a fair presumption growing out of recognized business dealings. The natural and usual way to deal is for a creditor to collect his interest and then apply any balance to the principal, and the presumption of the Master is borne out from the recognized methods of dealing in reference to such transactions. The Master says, in reference to this:

"The presumption is, the two payments having been made on the same day, that the interest was paid and accepted by the bank before the payment on the principal was accepted or credited. I therefore find that the plea of usury is not sustained."

If this position would not save the transaction from being usurious, under the case of *Plyler v. McGee*, 76 S. C., 450; 57 S. E., 180; 121 Am. St. Rep., 950, a calculation of the interest would show that as a matter of fact the transaction is not usurious. The interest was payable quarterly in advance at 8 per cent. per annum, and was not paid when due, practically every installment running for several days over the time it was due; and therefore the interest on

unpaid interest at 7 per cent. per annum is in excess of the $1.71 claimed to be the amount with which the transaction is tainted with usury. The amount actually received by the plaintiff does not exceed interest at 8 per cent. per annum, payable in advance, and the exceptions charging usury are overruled.

It is difficult to properly construe the terms of the bond, which provide in the first instance for the payment of $3,800 one year after the date of the bond, with interest at the rate of 8 per cent. per annum, payable quarterly in advance, and $50 payable on the principal until the whole amount of principal and interest be paid. We think that the most reasonable construction that can be placed upon the bond is the construction given by the Master, as will be shown by his report, and after a most careful consideration and study of the whole case, we are of the opinion that his Honor, Judge Memminger, did not commit any error in confirming the report of the Master.

The exceptions to the decree of his Honor, Judge Memminger, should therefore be and the same are overruled, and the judgment is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN (concurring and dissenting): It is a new proposition to me that a payee receiving at one time a payment upon the principal and interest of a note may apply the payment upon the principal and then collect interest in advance upon the principal as it stood prior to such application. This rule, applied to the partial payment of a note at bank and a renewal of the remainder, would work a manifest wrong. A careful calculation of the interest upon deferred payments and unpaid interest, shows that there was still an overcharge of $1.01.

I concur in the opinion in all other respects than the plea of usury, which should be sustained.